## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

JOSEPH PUGLIA,
an individual,

                                          Case No.:

      Plaintiff,

v.

I.C. SYSTEM, INC.,
a foreign profit corporation,
MCCARTHY, BURGESS & WOLFF, INC.,
a foreign profit corporation,
VERIZON WIRELESS SERVICES, LLC,
a foreign limited liability company,
EXPERIAN INFORMATION
SOLUTIONS, INC.,
a foreign for-profit corporation, and
TRANS UNION LLC,
a foreign limited liability company,

      Defendants.
_____/

## **COMPLAINT**

**COMES NOW**, Plaintiff, JOSEPHINE GREEN (hereinafter, "Plaintiff"), by

and through the undersigned counsel, and hereby sues Defendants, I.C. SYSTEM,

INC. (hereinafter, "IC System"), MCCARTHY, BURGESS & WOLFF, INC.

(hereinafter, "MBW"), VERIZON WIRELESS SERVICES, LLC (hereinafter,

"Verizon"), EXPERIAN INFORMATION SOLUTIONS, INC. (hereinafter,

"Experian"), and TRANS UNION LLC (hereinafter, "Trans Union") (hereinafter

collectively, "Defendants").  In support thereof, Plaintiff states:

1

## PRELIMINARY STATEMENT

1.     This is an action brought by an individual consumer for damages for Verizon's violations of the Fair Credit Reporting Act, 15 United States Code, Section 1681 et seq. (hereinafter, the "FCRA") wherein Verizon improperly credit-reported and subsequently verified objectively-inaccurate information related to a services account allegedly owed to Verizon on Plaintiff's consumer credit report and in Plaintiff's consumer credit file as maintained by Transunion and Experian.

2.     More specifically, Verizon continued to inaccurately report the account after Plaintiff disputed Verizon's reporting of such erroneous information directly to Transunion and Experian.

3.     Furthermore, this is an action for damages for Transunion and Experian's violations of the FCRA wherein Transunion and Experian continued to incorrectly report such account as a derogatory, negative, or adverse account with late payment information, despite Plaintiff's repeated disputes to Transunion and Experian explaining and proving that such account should be promptly deleted from Plaintiff's credit file and credit reports.

4.     Additionally, this is an action for damages brought by Plaintiff as an individual consumer against IC System, MBW, and Verizon for IC System, MBW, and Verizon's violations of the Florida Consumer Collection Practices Act, Chapter 559, Florida Statutes (hereinafter, the "FCCPA") wherein IC System, MBW, and

Verizon communicated with Plaintiff in an attempt to collect an alleged balance due on a service account after such account was closed and satisfied by the return of two devices.

5.     Finally, this is an action for damages brought by an individual consumer for Defendants' violations of the Fair Debt Collection Practices Act, 15 United States Code, Section 1692 (the "FDCPA") wherein IC System and MBW each communicated with Plaintiff in an attempt to collect an alleged balance due on a service account after such account was closed and satisfied by the return of two devices.

## JURISDICTION, VENUE & PARTIES

6.     Jurisdiction of this Court arises under 28 United States Code, Section 1331 as well as pursuant to the FCRA, 15 United States Code Section 1681, *et seq*.

7.     Defendants are subject to the jurisdiction of this Court as Defendants each regularly transact business in this District.

8.     Venue is proper in this District as the acts and transactions described herein occur in this District.

9.     At all material times herein, IC System is a foreign for-profit corporation existing under the laws of the state of Minnesota with its principal place of business located at 444 Highway 96 East, ST. Paul, MN 55127-2557 that regularly does business within Manatee County, Florida, where the causes of action herein

accrued.

10.    At all material times herein, MBW is a foreign for-profit corporation existing under the laws of the state of Ohio with its principal place of business located at 26000 Cannon Road, Cleveland, OH 44146 that regularly does business within Manatee County, Florida, where the causes of action herein accrued.

11.    At all material times herein, Verizon is a foreign limited liability company existing under the laws of the State of Delaware with its principal place of business located at One Verizon Way, Basking Ridge, NJ 07920 that regularly does business within Manatee County, Florida, where the causes of action herein accrued.

12.    At all material times herein, Experian is a for-profit corporation existing under the laws of the state of Ohio with its principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626.

13.    At all material times herein, Transunion is a foreign limited liability company existing under the laws of the state of Delaware with its principal place of business located at 555 West Adams Street, Chicago, Illinois 60661.

## FCRA STATUTORY STRUCTURE

14.    Congress enacted the FCRA requiring consumer reporting agencies to adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper

4

utilization of such information.  *See* 15 United States Code, Section 1681b.

15.     Under the FCRA, whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates. *Id.* at § e(b) (emphasis added).

16.     Under the FCRA, if a consumer disputes the completeness or accuracy of any item of information contained in a consumer's file, and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate—free of charge—and report the current status of the disputed information, or delete the item from before the end of the 30-day period beginning on the date on which the agency receives notice of the consumer's dispute.  *Id.* at § i(a).

17.     Under the FCRA, when a consumer reporting agency conducts any reinvestigation with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer.  *Id.* at § i(a)(4).

18.     Under the FCRA, if, after any reinvestigation of any information disputed by a consumer, an item of information is found to be inaccurate, incomplete, or cannot be verified, the consumer reporting agency shall promptly delete that item of information from the consumer's file or modify that item of information, as appropriate, based on the results of the reinvestigation.  *Id.* at §

i(a)(5).

19.     Under the FCRA, after a furnisher of information receives notification pursuant to Section 1681i(a)(2) of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the furnisher shall: (A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency pursuant to Section 1681i(a)(2) of this title; (C) report the results of the investigation to the consumer reporting agency; and (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis. *Id.* at § s-2(b).

20.     Under the FCRA, any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer: in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure; for statutory damages of not less than $100 and not more than $1,000; for such amount of punitive damages as the court may allow; and for the costs of the action together with reasonable attorneys' fees. *Id.* at § n.

21.     Under the FCRA, any person who is negligent in failing to comply with

6

any requirement imposed with respect to any consumer is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure and the costs of the action together with reasonable attorneys' fees. *Id.* at § o.

## **FCCPA AND FDCPA STATUTORY STRUCTURE**

22.    The FCCPA is a state consumer protection statute, modeled after the federal FDCPA, a statute designed to prohibit unfair, deceptive, and abusive practices in the collection of consumer debts as well as to protect against the invasion of individual privacy.  15 U.S.C., §§ 1692(a) and (e); Fla. Stat. §§ 559.55 and 559.77(5).

23.    The FDCPA imposes civil liability on any debt collector—and the FCCPA imposes liability on any creditor/person as well as any debt collector—who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another" and both statutes prohibit engaging in particular violative conduct in connection with collecting consumer debts.  15 U.S.C. § 1692(a)(6); Fla. Stat. § 559.55(5).

24.    Specifically, the FDCPA and FCCPA prohibit unlawful debt collection "communication" with consumer debtors, which is defined as "the conveying of information regarding a debt directly or indirectly to any person through any medium."  15 U.S.C. § 1692(a)(2); Fla. Stat. § 559.55(2) (emphasis

added).

25.     For example, the FDCPA prohibits a debt collector from using false, deceptive, or misleading representations or means in connection with the collection of any consumer debt.  See 15 U.S.C. §§ 1692(d)-(e).

26.     For example, the FCCPA prohibits a person from collecting consumer debt by communicating with the consumer in a manner that can be expected to harass or abuse the consumer debt and prohibits a person from attempting to collect a consumer debt that is known to be illegitimate. See Fla. Stat. § 559.72(7) and (9).

## **GENERAL ALLEGATIONS**

27.     At all material times herein, Plaintiff is an alleged "consumer" or "debtor" as defined by the FCRA, Section 1681a(c) because he is an individual and was allegedly obligated to pay a debt.

28.     At all material times herein, Verizon, itself and through its subsidiaries, regularly services consumer credit and credit-reports information associated with the same in Manatee County, Florida.

29.     At all material times herein, Verizon is a "person" who furnishes information to credit reporting agencies as provided in the FCRA and as defined by 15 United States Code, Section 1681s-2.

30.     At all material times herein, IC System, MBW, and Verizon each

attempt to collect and report information concerning an alleged balance on a consumer credit card account that was incurred as a result of identity theft and fraud, referenced by account number beginning   3134-, 0524-, and/or 4118- (hereinafter, the "Alleged Debt" or the "Account").

31.    At all material times herein, Verizon reports information concerning a closed consumer loan account to Transunion and Equifax including but not limited to, a tradeline account related to a consumer service account, referenced by account number 3689XXXXXX (hereinafter, the "Account").

32.    At all material times herein, Verizon furnishes, reports, and publishes specific details of consumers alleged outstanding or delinquent debt accounts to compel or coerce the consumer to either satisfy an alleged balance owed, or suffer the consequences of delinquent accounts, such as higher interest rates on consumer loans or complete denial of credit.

33.    At all material times herein, Transunion and Experian are each a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and each regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports.  Transunion and Experian each disburse such consumer reports to third parties under contract for monetary compensation.

34.    At all material times herein, Defendants act themselves or through their

agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

35.    All necessary conditions precedent to the filing of this action occurred, or Defendants waived or excused the same.

## FACTUAL ALLEGATIONS

## TERMINATION OF THE DEBT

36.    On or about October 5, 2022, Plaintiff and his wife returned their Verizon cellphones via UPS mail as part of an upgrade process with Verizon.

37.    Plaintiff received UPS tracking information for the returned cellphones with UPS tracking numbers of 1Z81RR180666606291 and 1Z4E9W380606671754.

38.    Furthermore, Verizon confirmed that the phones had been sent to them.

39.    As such, any loss of the phones after Plaintiff mailed them back to Verizon via UPS was no fault of Plaintiffs.

40.    Effectively, Plaintiff did not owe any further monies to Verizon on these phones as of October 5, 2022.

41.    On or prior to April 22, 2023, notwithstanding Plaintiff's return of the phones to Verizon, the Alleged Debt was placed for collections with IC System ("Account").

42.    More specifically, Verizon placed the illegitimate amount claimed to be owed on the phones, $2,954.36, for collections with IC System.

## IC SYSTEM, MBW, AND VERIZON'S
## ATTEMPTS TO COLLECT THE ALLEGED DEBT

43.     On or about April 22, 2023, despite having knowledge that Plaintiff returned the phones forming the Alleged Debt to Verizon, IC System sent a letter to Plaintiff in an attempt to collect the Alleged Debt. A true and correct copy of IC System's April Collection Letter is attached as **Exhibit A.**

44.     More specifically, IC System demanded a balance of $2,954.36.

45.     On or about June 6, 2023, despite having knowledge that Plaintiff returned the phones forming the Alleged Debt to Verizon, IC System sent another letter to Plaintiff in an attempt to collect the Alleged Debt. A true and correct copy of IC System's June Collection Letter is attached as **Exhibit B.**

46.     Prior to or about July 28, 2023, despite having knowledge that Plaintiff returned the phones forming the Alleged Debt to Verizon, IC System and Verizon transferred the Alleged Debt to MBW for collections.

47.     On or about July 28, 2023, despite having knowledge that Plaintiff returned the phones forming the Alleged Debt to Verizon, MBW sent a letter to Plaintiff in an attempt to collect the Alleged Debt. A true and correct copy of IC System's June Collection Letter is attached as **Exhibit C.**

48.     On or about September 19, 2023, despite having knowledge that Plaintiff returned the phones forming the Alleged Debt to Verizon, MBW sent another letter to Plaintiff in an attempt to collect the Alleged Debt. A true and correct

copy of IC System's June Collection Letter is attached as **Exhibit D.**

**PLAINTIFF'S DISPUTES REGARDING THE ACCOUNT AND**
**VERIZON, TRANSUNION, AND EXPERIAN'S DISPUTE RESPONSES**

49.     Prior to or about June 2023, Plaintiff obtained a copy of his consumer disclosure report from Experian and Transunion.

50.     Plaintiff noticed that Experian and Transunion were both reporting the Verizon Account as a collection account with a balance and past due amount of $2,685.

51.     As such, on or about July 20, 2023, Plaintiff sent a dispute letter (hereinafter, "First Dispute Letter") to Transunion and Experian and informed them of the erroneous reporting.  A true and correct copy of the First Dispute Letter is attached as **Exhibit E.**

52.     Experian received Plaintiff's First Dispute Letter.

53.     Transunion received Plaintiff's First Dispute Letter.

54.     Transunion and Experian conveyed Plaintiff's First Dispute Letter to Verizon.

55.     In response to Plaintiff's First Dispute Letter, Experian verified the Verizon account as past due and a balance amount of $2,685.

56.     In response to Plaintiff's First Dispute Letter, Transunion verified the Verizon account as past due and a balance amount of $2,685.

57.     On or about September 7, 2023, Plaintiff sent another dispute letter

(hereinafter, "Second Dispute Letter") to Transunion and Experian and informed them of the erroneous reporting.  A true and correct copy of the Second Dispute Letter is attached as **Exhibit F.**

58.   Experian received Plaintiff's Second Dispute Letter.

59.   Transunion received Plaintiff's Second Dispute Letter.

60.   Transunion and Equifax conveyed Plaintiff's Second Dispute Letter to Verizon.

61.   In response to Plaintiff's Second Dispute Letter, Experian verified the Verizon account as past due and a balance amount of $2,685.

62.   In response to Plaintiff's Second Dispute Letter, Transunion verified the Verizon account as past due and a balance amount of $2,685.

63.   On or about October 6, 2023, Plaintiff sent another dispute letter (hereinafter, "Third Dispute Letter") to Equifax and informed them of the erroneous reporting.  A true and correct copy of the Third Dispute Letter is attached as **Exhibit G.**

64.   Furthermore, Plaintiff enclosed proof of the shipping information regarding the returned phones, including the tracking numbers.

65.   Experian received Plaintiff's Third Dispute Letter.

66.   Transunion received Plaintiff's Third Dispute Letter.

67.   Transunion and Equifax conveyed Plaintiff's Third Dispute Letter to

Verizon.

68.    In response to Plaintiff's Third Dispute Letter, Experian verified the Verizon account as past due and a balance amount of $2,685.

69.    In response to Plaintiff's Third Dispute Letter, Transunion verified the Verizon account as past due and a balance amount of $2,685.

## DAMAGES

70.    Plaintiff retained Swift, Isringhaus, Dubbeld & McEleney, PLLC for the purpose of pursuing this matter against Defendants, and Plaintiff is obligated to pay his attorneys a reasonable fee for their services.

71.    The FCRA, Sections 1681n or 1681o, or both, provide for the award of up to $1,000.00 statutory damages, actual damages, punitive damages, as well as an award of attorneys' fees and costs to Plaintiff, should Plaintiff prevail in this matter against IC System, MBW, Verizon, Transunion, and Experian.

72.    As a result of Defendants' conduct, actions, and inactions, Plaintiff was deterred from making credit applications as he believed he would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account, he did not wish to further damage his credit score with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse tradeline account.

73.    Additionally, as a result of Defendants' actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that despite Plaintiff's exhaustive efforts to convey to Verizon that he did not owe the Debt, including supplying Defendants with supporting documentation, Plaintiff must simply endure Defendants' reporting of the Account.

### COUNT ONE
### FAIR CREDIT REPORTING ACT –
### <u>VIOLATION OF 15 UNITED STATES CODE, SECTION 1681s-2(b)</u>
### (As to Verizon Only)

Plaintiff re-alleges paragraphs one (1) through sixty-nine (69) as if fully restated herein and further states as follows:

74.    Verizon is subject to, and violated the provisions of, 15 United States Code, Section 1681s-2(b), by willfully and/or negligently publishing or furnishing inaccurate trade-line information within Plaintiff's credit reports, failing to fully and properly re-investigate Plaintiff's disputes, failing to review all relevant information regarding the same, and failing to request that Transunion and Experian update and fix the Account on Plaintiff's credit reports and credit file after re-investigating Plaintiff's repeated disputes.

75.    As described above, Plaintiff and his wife returned their Verizon cellphones via UPS mail as part of an upgrade process with Verizon on October 5, 2022.

76.    Despite receiving notice of Plaintiff's disputes from Plaintiff,

Transunion and Experian—including the information and documents referenced above— Verizon willfully and/or negligently failed to request that Transunion and Experian update the tradeline associated with the Account and continued to report derogatory, late payment information to Transunion and Experian including significant balances due, and as significantly past-due.

77.     Rather than delete its reporting of the Account after receiving notice of Plaintiff's repeated disputes, Verizon inaccurately "verified" or "updated" its derogatory reporting of the Account which ultimately reflected negatively and adversely on Plaintiff's credit reports and credit files as maintained by Transunion and Experian.

78.     Verizon's refusal to request that Transunion and Experian update the tradeline associated with the Account was intentionally, willfully, and knowingly done as Verizon clearly possessed knowledge that the Account was not owed.

79.     Verizon's re-investigations were not conducted in good faith.

80.     Verizon's re-investigations were not conducted reasonably.

81.     Verizon's re-investigations were not conducted using all information and documents reasonably available to Verizon.

82.     As a result of Verizon's conduct, actions, and inactions, Plaintiff suffered damage to his credit reputation and credit worthiness, was deterred from making credit applications as he believed he would not be able to obtain favorable

credit terms as a result of Defendants' derogatory and continued reporting of the Account, did not wish to further damage his credit score with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse tradeline account.

83.     Verizon's conduct was a direct and proximate cause of, as well as a substantial factor in, causing the serious injuries, damages, and harm to Plaintiff as stated herein.

84.     Verizon's actions in violation of 15 United States Code, Section 1681s-2(b), constitute negligent or willful noncompliance, or both, with the FCRA, and entitles Plaintiff to actual damages, statutory damages, and punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

**COUNT TWO:**
**FAIR CREDIT REPORTING ACT –**
**<u>VIOLATION OF 15 UNITED STATES CODE, SECTION 1681e(b)</u>**

Plaintiff re-alleges paragraphs one (1) through sixty-nine (69) as if fully restated herein and further states as follows:

85.     Transunion and Experian are each subject to, and each violated the provisions of, 15 United States Code, Section 1681e(b), by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the

preparation of the credit reports and credit files published and maintained concerning Plaintiff.

86.    Transunion and Experian willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports regarding the Account.

87.    Specifically, despite Plaintiff advising Transunion and Experian that he did not owe the Alleged Debt—Transunion and Experian each continued to report the Account with a balance due, with a balance past-due, resulting in the Account being reported as a derogatory, negative, or adverse account in Plaintiff's credit reports and credit files.

88.    Further, Transunion and Experian willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit reports and credit files when re-investigating Plaintiff's disputes of the above-referenced inaccuracies contained in his Transunion and Experian credit reports and credit file.

89.    Such reporting of the Account is false and evidences Transunion's and Experian's failure to establish or follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports and credit file.

90.    As a result of Transunion's and Experian's conduct, actions, and inactions, Plaintiff suffered damage to his credit reputation and credit worthiness,

was deterred from making credit applications as he believed he would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account, did not wish to further damage his credit score with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse tradeline account.

91.     Transunion's and Experian's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

92.     Transunion's and Experian's violations of 15 United States Code Section 1681e(b), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

**COUNT THREE:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681i(a)(1)**

Plaintiff re-alleges paragraphs one (1) through sixty (60) as if fully restated herein and further states as follows:

93.     Transunion and Experian are each subject to, and each violated the provisions of, 15 United States Code, Section 1681i(a)(1), by failing to conduct

reasonable re-investigations of Plaintiff's disputes to determine whether the disputed information was inaccurate and by failing to subsequently update the inaccurate information in Plaintiff's credit reports and credit files.

94. Specifically, Transunion and Experian each willfully and/or negligently refused to properly re-investigate Plaintiff's consumer reports upon receiving Plaintiff's disputes, as described herein.

95. Overall, Plaintiff's Disputes provided Transunion and Experian with sufficient information allowing Transunion and Experian to identify that the Account was not owed, and therefore, should be updated on Plaintiff's credit reports and credit file as maintained by Transunion and Experian.

96. Transunion and Experian did not request any documents from Verizon corroborating information furnished and verified by Verizon to Transunion and Experian regarding Plaintiff and the Account in response to any of Plaintiff's Disputes.

97. As such, Transunion's and Experian's re-investigations were not conducted in such a way as to assure whether information regarding Plaintiff and the Account was inaccurate and each failed to subsequently update and remove the inaccurate information in Plaintiff's credit reports and credit files.

98. Such reporting is false and evidences Transunion's and Experian's failure to conduct reasonable re-investigations of Plaintiff's repeated disputes.

99.    Transunion's and Experian's reinvestigations of Plaintiff's disputes were not conducted reasonably.

100.    Transunion's and Experian's reinvestigations merely copied and relied upon the inaccurate Account information conveyed by Verizon.

101.    Transunion's and Experian's reinvestigations of Plaintiff's disputes were not conducted in good faith.

102.    Transunion's and Experian's reinvestigation procedures are unreasonable.

103.    Transunion's and Experian's re-investigations of Plaintiff's disputes were not conducted using all information reasonably available to Transunion and Experian.

104.    Transunion's and Experian's reinvestigations were *per se* deficient by reason of these failures in Transunion's and Experian's reinvestigations of Plaintiff's disputes and the Account.

105.    As a result of Transunion' and Experian's conduct, actions, and inactions, Plaintiff suffered damage to his credit reputation and credit worthiness, was deterred from making credit applications as he believed he would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account, did not wish to further damage his credit score with futile credit inquires, and he was continually evaluated for credit using consumer reports

that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse tradeline account.

106.   Transunion and Experian's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

107.   Transunion's and Experian's actions in violation of 15 United States Code, Section 1681i(a)(1), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive, damages, as well as attorneys' fees and costs enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

**COUNT FOUR:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681i(a)(4)**

Plaintiff re-alleges paragraph one (1) through sixty (60) as if fully restated herein and further states as follows:

108.   Transunion and Experian are each subject to, and each violated the provisions of, 15 United States Code, Section 1681i(a)(4), by failing to review and consider all relevant information received in Plaintiff's disputes.

109.   Transunion's and Experian's failure to review and consider all information received in Plaintiff's disputes was done in bad faith.

110.   As a result of Transunion's and Experian's conduct, actions, and

inactions, Plaintiff suffered damage to his credit reputation and credit worthiness, was deterred from making credit applications as he believed he would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account, did not wish to further damage his credit score with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse tradeline account.

111.   Transunion's and Experian's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

112.   Transunion's and Experian's actions in violation of 15 United States Code, Section 1681i(a)(4), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive, damages, as well as attorneys' fees and costs enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

**COUNT FIVE:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681i(a)(5)**

Plaintiff re-alleges paragraphs one (1) through sixty (60) as if fully restated herein and further states as follows:

113.   Transunion and Experian are each subject to, and each violated the

provisions of, 15 United States Code, Section 1681i(a)(5), by failing to update or delete any information that was the subject of Plaintiff's disputes found to be inaccurate or that could not be verified.

114.   Specifically, despite Transunion and Experian receiving Plaintiff's Disputes—which proved he did not owe the Alleged Debt—neither Transunion nor Experian updated the Account on Plaintiff's credit reports and credit files.

115.   Instead, Transunion and Experian continued to report the Account in Plaintiff's credit reports and files as belonging to Plaintiff with a significant balance due as well as derogatory, late payment information regarding the Account.

116.   As a result of Transunion's and Experian's conduct, actions, and inactions, Plaintiff suffered damage to his credit reputation and credit worthiness, was deterred from making credit applications as he believed he would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account, did not wish to further damage his credit score with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse tradeline account.

117.   Transunion's and Experian's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

118.   Transunion's and Experian's actions in violation of 15 United States Code, Section 1681i(a)(5), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive, damages, as well as attorneys' fees and costs enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

## COUNT SIX:
## UNLAWFUL DEBT COLLECTION PRACTICE –
## VIOLATION OF FLORIDA STATUTES, SECTION 559.72(9)

Plaintiff re-alleges paragraphs one (1) through forty-eight (48) as if fully restated herein and further states as follows:

119.   IC System, MBW, and Verizon are each subject to, and each violated the provisions of, Florida Statutes, Section 559.72(9) by attempting to collect the Alleged Debt with knowledge that the Alleged Debt is not legitimately owed by Plaintiff and by asserting the existence of a legal right that IC System, MBW, and Verizon know does not exist.

120.   Specifically, IC System, MBW, and Verizon possessed actual knowledge that Plaintiff and his wife returned their Verizon cellphones via UPS mail as part of an upgrade process with Verizon on October 5, 2022.

121.   Despite knowing that Plaintiff did not owe the Alleged Debt, IC System sent at least two (2) letters to Plaintiff asserting a balance owed by Plaintiff with respect to the Alleged Debt in its attempts to collect the Alleged Debt.

122.   Despite knowing that Plaintiff did not owe the Alleged Debt, MBW sent at least two (2) letters to Plaintiff asserting a balance owed by Plaintiff with respect to the Alleged Debt in its attempts to collect the Alleged Debt.

123.   IC System, MBW, and Verizon's letters constitute an indirect attempt by Verizon to collect the Alleged Debt from Plaintiff and a direct attempt by IC System and MBW to collect the Alleged Debt from Plaintiff.

124.   Moreover, despite Plaintiff's repeated attempts to dispute the Alleged Debt and advise IC System, MBW, and Verizon that he did not personally owe the Alleged Debt, IC System, MBW, and Verizon's conduct showed that IC System, MBW, and Verizon could and would continue to hold Plaintiff personally responsible for the Alleged Debt unless and until Plaintiff made payment on the Alleged Debt.

125.   IC System, MBW, and Verizon do not possess the legal right to assert a balance owed on the Alleged Debt from Plaintiff or to assert that IC System, MBW, and Verizon could and would continue to hold Plaintiff personally responsible for the amount owed on the Alleged Debt.

126.   As such, IC System, MBW, and Verizon attempted to collect the Alleged Debt—an amount known to be illegitimate—and asserted legal rights that do not exist in their communication with Plaintiff made in an attempt to collect the Alleged Debt.

127.   As a direct and proximate result of IC System, MBW, and Verizon's actions, Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

**COUNT SEVEN:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1692e, e(2)(A), and**
**e(10)**

Plaintiff re-alleges paragraphs one (1) through forty-eight (48) as if fully restated herein and further states as follows:

128.   IC System and MBW are each subject to, and violated the provisions of, 15 United States Code, Section 1692e, e(2)(A), and e(10) by using false representations and deceptive means in attempting to collect the Alleged Debt, including by falsely representing the amount, legal status, or character of the alleged Debt.

129.   Specifically, IC System and MBW possessed actual knowledge that Plaintiff and his wife returned their Verizon cellphones via UPS mail as part of an upgrade process with Verizon on October 5, 2022 and Plaintiff repeatedly advised Defendants that he did not owe the Alleged Debt for such reasons.

130.   Despite knowing that Plaintiff did not owe the Alleged Debt, IC System sent at least two (2) letters to Plaintiff asserting a balance owed by Plaintiff with respect to the Alleged Debt in its attempts to collect the Alleged Debt.

131.   Despite knowing that Plaintiff did not owe the Alleged Debt, MBW sent at least two (2) letters to Plaintiff asserting a balance owed by Plaintiff with

respect to the Alleged Debt in its attempts to collect the Alleged Debt.

132.   Moreover, IC System and MBW falsely and deceptively asserted that they could and would continue to collect the Alleged Debt from Plaintiff unless and until Plaintiff paid the Alleged Debt.

133.   IC System and MBW's above-referenced conduct attempts to deceive and mislead Plaintiff into believing that Plaintiff must immediately make payment to IC System and MBW on the Alleged Debt or continue to endure IC System and MBW's unlawful collection attempts, the repetitive transfer of the Alleged Debt to a new debt collector, and potential derogatory credit reporting of the Alleged Debt as owed by Plaintiff personally.

134.   As a direct and proximate result of IC System and MBW's actions, Plaintiff sustained damages as defined by 15 United States Code, Section 1692k.

## **PRAYER FOR RELIEF**

**WHEREFORE**, as a direct and proximate result of Defendants' conduct, Plaintiff respectfully requests an entry of:

a.   Judgment against Verizon, Transunion, and Equifax for maximum statutory damages for violations of the FCRA;

b.   Judgment against IC System, MBW, and Verizon declaring that Defendants violated the FCCPA;

c.   Judgment enjoining IC System, MBW, and Verizon from

engaging in further conduct in violation of the FCCPA;

  d. Judgment against IC System, MBW, and Verizon for maximum statutory damages for violations of the FCCPA;

  e. Judgment against IC System and MBW for maximum statutory damages for violations of the FDCPA;

  f. Actual damages in an amount to be determined at trial;

  g. Compensatory damages in an amount to be determined at trial;

  h. Punitive damages in an amount to be determined at trial;

  i. An award of attorney's fees and costs; and

  j. Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendants and demands that Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

  Respectfully submitted,

  **SWIFT LAW PLLC**

  */s/ Jon P. Dubbeld*
  **Aaron M. Swift, Esq., FBN 0093088**
  **Jordan T. Isringhaus, Esq., FBN 0091487**
  **Jon P. Dubbeld, Esq., FBN 105869**

**Sean E. McEleney, Esq., FBN 125561**
8380 Bay Pines Blvd.
St. Petersburg, FL 33709
Phone: (727) 755-3676
Fax: (727) 255-5332
aswift@swift-law.com
jisringhaus@swift-law.com
jdubbeld@swift-law.com
smceleney@swift-law.com
*Counsel for Plaintiff*